Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/04/2017 09:08 AM CDT

IN RE ESTATE OF HERMAN M. VOLLMANN, DECEASED.
CATHY DENSBERGER, PERSONAL REPRESENTATIVE OF THE ESTATE
OF HERMAN M. VOLLMANN, DECEASED, APPELLANT,
v. NEBRASKA DEPARTMENT OF HEALTH AND
HUMAN SERVICES, APPELLEE.

___ N.W.2d ___

Filed May 12, 2017.    No. S-16-608.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Administrative Law: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Medical Assistance: Federal Acts: States.** The Medicaid program provides joint federal and state funding of medical care for individuals whose resources are insufficient to meet the cost of necessary medical care.

4. **____: ____: ____.** A state is not obligated to participate in the Medicaid program; however, once a state has voluntarily elected to participate, it must comply with standards and requirements imposed by federal statutes and regulations.

5. **Medical Assistance.** Neb. Rev. Stat. § 68-919(1)(a) (Cum. Supp. 2014) provides that a recipient of medical assistance under the medical assistance program, who was 55 years of age or older at the time the medical assistance was provided, is indebted to the Department of Health and Human Services for the total amount paid for medical assistance on the recipient's behalf.

6. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

7. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

8. **Administrative Law: Statutes.** Properly adopted and filed agency regulations have the effect of statutory law.

9. **Decedents' Estates: Administrative Law: Medical Assistance.** Under the Medical Assistance Act, Neb. Rev. Stat. §§ 68-901 to 68-974 (Reissue 2009 & Cum. Supp. 2014), where a Medicaid recipient is not survived by a spouse or by a child who is either under the age of 21 or is blind or totally and permanently disabled and where no undue hardship as provided in the Department of Health and Human Services' rules and regulations would result, the beneficiaries of a recipient's estate are not entitled to an inheritance at the public's expense.

Appeal from the County Court for Otoe County: John F. Steinheider, Judge. Affirmed.

Phillip Wright for appellant.

Douglas J. Peterson, Attorney General, and Ronald L. Sanchez, Special Assistant Attorney General, for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.
## INTRODUCTION
In this appeal, we must determine whether "medical assistance" provided to a Medicaid recipient includes costs for his room and board and other "nonmedical" expenses at nursing facilities. A chain of statutes and regulations dictates that it does. Because federal law requires a state to seek recovery of medical assistance,[1] those costs can be recovered from the

---

[1] 42 U.S.C. § 1396p(b)(1) (2012).

recipient's estate. The county court granted a summary judgment for that recovery, and we affirm.

## BACKGROUND

On September 4, 2014, Herman M. Vollmann died at the age of 78. The Nebraska Department of Health and Human Services (DHHS) filed a claim for $22,978.35 for services provided to Vollmann while he resided at two different nursing homes and was over 55 years old. Cathy Densberger, personal representative of Vollmann's estate, disallowed the claim.

DHHS filed a petition for allowance of the claim. Densberger objected. The parties filed cross-motions for summary judgment. The evidence showed that DHHS paid $20,545.07 to one nursing home facility for nursing facility services on Vollmann's behalf and paid $2,012.66 to a different facility. The amounts paid were based on the per diem rates calculated under Nebraska's plan less Vollmann's monthly share of cost obligation. But Densberger asserted that only $360.45 of the claim was for "'medical expense' or medical treatment."

The county court sustained DHHS' motion for summary judgment and overruled Densberger's motion. The court determined that the services which Densberger defined as room and board clearly fell within the parameters of services provided under the Medical Assistance Act.[2] Densberger appealed, and we moved the case to our docket.[3]

## ASSIGNMENTS OF ERROR

Densberger assigns that the county court erred in (1) determining that DHHS was entitled to amounts for room and board or other nonmedical expenses, (2) allowing DHHS to "effectively receive the entire value of [Vollmann's] estate," and (3) granting DHHS' motion for summary judgment.

---

[2] Neb. Rev. Stat. §§ 68-901 to 68-974 (Reissue 2009 & Cum. Supp. 2014).

[3] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]

[2] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[5]

## ANALYSIS

### Overview of Medicaid

[3] The Medicaid program provides joint federal and state funding of medical care for individuals whose resources are insufficient to meet the cost of necessary medical care.[6] The program provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons.[7] Between 50 and 83 percent of a state's expenditures for services under an approved state plan are paid for by the federal government[8]; this is referred to as the "Federal medical assistance percentage."[9]

[4] A state is not obligated to participate in the Medicaid program; however, once a state has voluntarily elected to participate, it must comply with standards and requirements

---

[4] *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016).

[5] *Maycock v. Hoody*, 281 Neb. 767, 799 N.W.2d 322 (2011).

[6] *Smalley v. Nebraska Dept. of Health & Human Servs.*, 283 Neb. 544, 811 N.W.2d 246 (2012).

[7] *Id.*

[8] See 42 C.F.R. § 433.10(b) (2016).

[9] See 42 U.S.C. § 1396b(a)(1) (2012).

imposed by federal statutes and regulations.[10] A state risks the loss of part or all federal funding if it does not comply with the provisions of the Medicaid program.[11] Nebraska elected to participate in the Medicaid program through enactment of the Medical Assistance Act, and DHHS is responsible for administering Nebraska's program.[12]

## Medical Assistance

[5] The heart of this appeal is Densberger's contention that the law does not allow reimbursement to the State for costs incurred at a nursing facility for expenses such as room and board and administrative expenses. A Nebraska statute provides that a recipient of medical assistance under the medical assistance program, who was 55 years of age or older at the time the medical assistance was provided, is indebted to DHHS for the total amount paid for medical assistance on the recipient's behalf.[13] But before analyzing whether recovery is authorized, we must examine what constitutes medical assistance. This requires us to examine a chain of complex federal and state statutes and regulations.

[6-8] Because the meaning of medical assistance requires interpretation of statutes and regulations, we recall three basic principles. First, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[14] Second, components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent

---

[10] *Id.*

[11] See 42 U.S.C. § 1396c (2012).

[12] See *Smalley v. Nebraska Dept. of Health & Human Servs., supra* note 6.

[13] § 68-919(1)(a).

[14] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

of the Legislature, so that different provisions are consistent, harmonious, and sensible.[15] Finally, properly adopted and filed agency regulations have the effect of statutory law.[16]

A federal statute defines "medical assistance" to mean "payment of part or all of the cost" of certain care and services,[17] including nursing facility services.[18] Federal statutes dictate that a state plan for medical assistance must provide for making medical assistance available for nursing facility services.[19] Accordingly, a Nebraska statute provides that medical assistance includes "coverage for health care and related services," including nursing facility services.[20] In sum, medical assistance includes nursing facility services.

We then turn to the meaning of nursing facility services. A federal statute instructs that nursing facility services are "services which are or were required to be given an individual who needs or needed on a daily basis nursing care . . . or other rehabilitation services which as a practical matter can only be provided in a nursing facility on an inpatient basis."[21]

This takes us to the definition of a nursing facility, which includes an institution primarily engaged in providing to residents "skilled nursing care and related services for residents who require medical or nursing care."[22] According to a Nebraska regulation, "[r]outine nursing facility services include regular room, dietary, and nursing services . . . ."[23]

---

[15] *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

[16] *Merie B. on behalf of Brayden O. v. State*, 290 Neb. 919, 863 N.W.2d 171 (2015).

[17] 42 U.S.C. § 1396d(a) (2006).

[18] § 1396d(a)(4)(A).

[19] See 42 U.S.C. §§ 1396a(a)(10)(A) (2006) and 1396d(a)(4)(A).

[20] § 68-911(1)(c).

[21] § 1396d(f).

[22] 42 U.S.C. § 1396r(a)(1)(A) (2012).

[23] 471 Neb. Admin. Code, ch. 12, § 011.04B (2014).

Rates for Nursing Facility Services

Congress allowed the states to develop payment methods and standards for nursing facilities. A state plan for medical assistance must provide for a public process for determination of rates of payment under the plan for nursing facility services.[24]

Nebraska regulations set forth the methodology for determining a nursing facility's per diem. DHHS determines rates under a cost-based prospective methodology.[25] DHHS "determines facility-specific prospective per diem rates . . . based on the facility's allowable costs incurred and documented during the Report Period."[26] A facility's prospective rate consists of four components: the direct nursing component, the support services component, the fixed cost component, and the nursing facility quality assessment component.[27] Allowable costs— "those facility costs which are included in the computation of the facility's per diem"[28]—include such things as room and dietary services.[29]

Recovery for Room and Board

Densberger argues that DHHS is not entitled to recover money paid for room and board and other nonmedical expenses. She concedes in her brief that DHHS "has a duty to provide nursing home services including room and board . . . for a Medicaid recipient" but asserts that "there is nothing in the statute to allow recovery for non-medical assistance expenses."[30] We disagree.

---

[24] § 1396a(a)(13)(A).

[25] See 471 Neb. Admin. Code, ch. 12, § 011.08 (2012).

[26] § 011.08D.

[27] *Id.*

[28] 471 Neb. Admin. Code, ch. 12, § 011.02 (2014).

[29] See § 011.04B.

[30] Brief for appellant at 7.

Section 68-919(1) plainly provides that a recipient of medical assistance "shall be indebted to [DHHS] for the total amount paid for *medical assistance* on behalf of the recipient." (Emphasis supplied.) Densberger claims that § 68-919 "is careful to draw a distinction between costs incurred for medical assistance as compared to costs for a medical institution."[31] We see no distinction. Whether the recipient of medical assistance (1) was 55 years of age or older or (2) resided in a medical institution and could not reasonably be expected to be discharged and resume living at home, the statute is clear that the debt "shall include the total amount of medical assistance provided."[32] And, as set forth above, the State provides "medical assistance" when it pays part or all of the costs for routine nursing services in a nursing facility—which costs include room and board and other "nonmedical" expenses.

Nor does the federal statute concerning liens, adjustments and recoveries, and transfers of assets[33] support Densberger's argument. Although Densberger refers to a "lien," DHHS' claim was unsecured. Thus, the portion of the federal statute regarding liens does not apply here.[34] Section 1396p(b)(1) directs that "the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan." The statute specifically authorizes recovery of medical assistance consisting of "nursing facility services."[35] Densberger's argument that "medical assistance" as used in § 1396p is "traditional medically related services such as nursing, hospital and prescription services"[36] ignores the meaning of "nursing facility services."

---

[31] *Id.* at 6.

[32] § 68-919(3).

[33] See § 1396p.

[34] See § 1396p(a)(1) and (b)(1)(A).

[35] § 1396p(b)(1)(B)(i).

[36] Brief for appellant at 6.

Densberger next argues that it would be inequitable to allow DHHS to effectively receive the value of the entire estate. But DHHS' claim is founded in a contractual relationship governed by the provisions of the Medical Assistance Act. Anyone seeking medical assistance from the State must file an application.[37] The act's provisions determine eligibility for benefits,[38] establish a debt to DHHS,[39] and authorize its recovery after the recipient's death except under certain circumstances.[40] Densberger did not argue that any of those circumstances applied to this estate.

Densberger relies on a U.S. Supreme Court decision[41] concerning third-party liability for medical expenses. But her reliance is misplaced. That case did not concern the meaning of medical assistance, but, rather, involved the apportionment of damages recovered by a living Medicaid recipient between the recipient and the state Medicaid agency.

Densberger also asserts that DHHS' attempt to collect 71 percent of the net value of the remaining estate is unconscionable and contrary to law. Again, we disagree. Although DHHS may waive its claim in whole or in part,[42] it declined to do so in this case. A Nebraska regulation explains the public policy underlying waivers for undue hardship:

> Waivers granted by [DHHS] based on undue hardship are intended to prevent the impoverishment of the deceased recipient's family if [DHHS] were to pursue its estate recovery claim. The fact that family members anticipate or expect an inheritance or may be inconvenienced

---

[37] See § 68-914.

[38] See, e.g., § 68-915.

[39] See § 68-919(1).

[40] See § 68-919(2).

[41] *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006).

[42] See § 68-919(5).

economically by the lack of an inheritance is not a valid basis for an undue hardship waiver.[43]

[9] The evidence does not establish grounds for a waiver. Vollmann was survived by five children, who, under his will, were the devisees of his estate in equal shares. Densberger admitted that there was no child who was under 21 years old, blind, or totally and permanently disabled at the time of Vollmann's death. Under the Medical Assistance Act, where a Medicaid recipient is not survived by a spouse or by a child who is either under the age of 21 or is blind or totally and permanently disabled and where no undue hardship as provided in DHHS' rules and regulations would result, the beneficiaries of a recipient's estate are not entitled to an inheritance at the public's expense.[44] That is the situation here. Densberger's assertion that the State "seems to make a profit at the expense of Nebraska residents"[45] because of reimbursement by the federal government[46] is incorrect. When the State recovers funds from an estate, "the federal government is credited with a percentage equal to the state's [federal medical assistance percentage], and the state retains the balance."[47] The notion that the Medicaid program constitutes a moneymaking scheme for the State borders on the frivolous.

## Summary Judgment

Finally, Densberger argues that summary judgment was improper due to a material question of fact. She stated in her affidavit that most of Vollmann's expenses were nonmedical in nature, and she contends that "there is a material question of fact whether room and board and other non-medical

---

[43] 471 Neb. Admin. Code, ch. 38, § 004.01 (2008).

[44] See § 68-919.

[45] Reply brief for appellant at 3.

[46] See § 1396b.

[47] *West Virginia v. U.S. Dept. Health and Human Serv.*, 289 F.3d 281, 285 (4th Cir. 2002).

expenses are in fact 'medical assistance' as defined by the statutes."[48] But that issue presents a question of law, which does not prevent summary judgment. This assignment of error lacks merit.

## CONCLUSION

Medical assistance includes sums paid on a Medicaid recipient's behalf for nursing facility services. Because nursing facility services include room and board costs and other expenses, DHHS is statutorily authorized to recover the sums it paid for such medical assistance from Vollmann's estate. We affirm the summary judgment in favor of DHHS.

Affirmed.

---

[48] Brief for appellant at 9.